Argued and submitted April 15, reversed and remanded for reconsideration June 3, 1987

AFSCME LOCAL 88,
*Petitioner,*

*v.*

MULTNOMAH COUNTY,
*Respondent.*

(UP-89-85; CA A41264)

737 P2d 652

Henry H. Drummonds, Portland, argued the cause for petitioner. With him on the brief was Barbara J. Diamond and Kulongoski, Durham, Drummonds & Colombo, Portland.

Jane E. Stonecipher, Assistant County Counsel, Portland, argued the cause for respondent. With her on the brief was John B. Leahy, County Counsel, Portland.

Before Warden, Presiding Judge, and Joseph, Chief Judge, and Van Hoomissen, Judge.

WARDEN, P. J.

## WARDEN, P. J.

Local 88 of the American Federation of State, County, and Municipal Employees (AFSCME) seeks review of a decision of the Employment Relations Board (ERB) which held that Multnomah County (the county) did not violate an agreement with AFSCME that employes transferred from the county to the City of Portland (the city) would be placed in positions with the city comparable to those that they held with the county. We reverse and remand.

In recent years the county has been withdrawing from providing urban-level services to the urbanized but unincorporated areas of the county between the city and Gresham. As part of that withdrawal, it has transferred a number of functions and employes to the city in anticipation of the eventual incorporation of much of the area into the city. Among the functions transferred in 1984 was road maintenance. AFSCME represented the affected county employes and filed an action in circuit court for an injunction and an unfair labor practice complaint with ERB, seeking in both to protect the employes' rights. In July, 1984, AFSCME and the county executed a settlement agreement to resolve those cases. Under the agreement, AFSCME accepted the terms of the Intergovernmental Agreements between the county and the city and agreed not to initiate grievances on behalf of the employes so long as those agreements were fully and faithfully carried out. The crucial portion of the relevant Intergovernmental Agreement provides:

> "*Job Classification.* Each transferring county employee shall be entitled to placement in a Civil Service position comparable to the Civil Service position they [*sic*] last enjoyed with the County, as determined by the City Civil Service Board. The determination as to the eligibility of each individual for placement in a Civil Service position shall be made by the City's Civil Service Board before any transfer takes place. The City agrees to pursue expeditious resolution of these issues before the Board."

At issue is the status of seven transferred employes. As county employes, four of them were classified as Truck Drivers, two as Maintenance Workers 2 (Lead) and one as a Maintenance Worker 2. The city's Civil Service Board (the Board) determined that the county position of Truck Driver is

comparable to the city position of Automotive Equipment Operator 1, that Maintenance Worker 2 (Lead) is comparable to Senior Utility Worker and that Maintenance Worker 2 is comparable to Utility Worker. However, because there were no vacancies in the higher positions, the city assigned all seven employees to positions as Utility Workers. The employes appealed the placements to the Board, which ruled that it did not have the authority to create comparable positions for the employes and that the city's action in placing them in positions that were not comparable to their county positions was therefore proper. It awarded the employes layoff status in the comparable positions, with their seniority dates determined by their work with the County.[1]

After the Board's action, AFSCME filed an unfair labor practice complaint against the county, alleging that the city's failure to give the employes comparable positions breached the settlement agreement. ERB dismissed the complaint, concluding that neither the city nor the county had breached the Intergovernmental Agreement. ERB reasoned that, by the term of the Intergovenmental Agreements which were accepted by AFSCME, the city and the county had agreed that the Board would be the final arbitrator of "these issues" and that its ruling was similar to that of an arbitrator in a collective bargaining agreement. It therefore deferred to the Board's determination.

ERB misunderstands both the Board's role under the Intergovernmental Agreement and what the Board actually did. That agreement gives the Board the authority to determine what city positions are comparable to the employes' previous county positions; that is *all* the authority that it gives the Board. The agreement then requires the city to place the former county employes into those comparable city positions. The Board has determined which positions are comparable, and it has given the employes layoff status in them, but it has not actually placed them in comparable positions. It did not believe that it had the power to create new positions or, apparently, to permit former county employes to "bump" city employes. Its determination that the job placements were valid, therefore, was simply a statement that they were correct

---

[1] The Board also noted that the former Maintenance Worker 2 *had* received a comparable position and was therefore not entitled to anything more.

in light of the city's personnel policies. It was *not* a determination that the employes had been placed in positions comparable to those which they held with the county nor that the county or the city had complied with the Intergovernmental Agreement. Indeed, the Board explicitly recognized that, with one exception, the employes had not received comparable placements; if anything, it determined that the city had *not* complied with the Agreement. The Board did not act as an arbitrator of all issues involved. There is nothing in its decision concerning the actual placements to which ERB could defer.

In short, it appears from this record that *the city,* which is not a party to this proceeding, has breached the Intergovernmental Agreement. However, there appear to be remaining issues which ERB must resolve before it can determine whether *the city's* failure to place the six employes in comparable positions constitutes an unfair labor practice *by the county* and, if so, what remedies would be appropriate. We therefore reverse and remand the case so that ERB may consider those issues.[2]

Reversed and remanded for reconsideration.

---

[2] AFSCME also filed a writ of review from the Board's decision in Multnomah County Circuit Court. That case was stayed pending resolution of the unfair labor practices claim. We do not know what issues AFSCME raised in that proceeding, nor do we intend this opinion to resolve them.